MURDOCK, Justice.
David T. Harris and Stacy L. Harris appeal from a summary judgment entered by the Shelby Circuit Court in favor of Deutsche Bank National Trust Company, as Trustee under the Pooling and Servicing Agreement dated November 1, 2005, GSAMP Trust 2005-HE5 (“the trustee”), as to the trustee’s statutory-ejectment action against them and as to their counterclaim against the trustee. We vacate the trial court’s summary judgment in favor of the trustee as to its ejectment action and remand the case for further proceedings; we affirm the summary judgment in favor of the trustee as to the Harrises’ counterclaim.

I. Facts and Procedural History

In June 2005, the Harrises purchased a house in Shelby County (“the property”) through a loan from SouthStar Funding, LLC (“SouthStar”), in the amount of $120,350. The debt was divided into two adjustable-rate notes made payable to SouthStar — the first in the amount of $96,300 and the second in the amount of $24,050. The Harrises executed mortgages to secure the notes. The mortgages identified the “Lender” as SouthStar and the “mortgagee” as “Mortgage Electronic Systems, Inc.” (“MERS”), “acting solely as a nominee for Lender and Lender’s successors and assigns.” This action concerns the first note and mortgage for the debt of $96,300.
The note provided that SouthStar “may transfer this Note,” and the mortgage provided that the note “can be sold one or more times without prior notice to” the Harrises. The mortgage contained the following pertinent provisions concerning notices, acceleration of the debt, and invocation of the power of sale by the Lender:
“15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower’s notice address.
[[Image here]]
“22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower’s breach of any covenant or agreement in this Security Instrument.... The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date, no later than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) the failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.... If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and other remedies permitted by Applicable Law.
*485 “If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish notice of sale once a week for three consecutive weeks in a newspaper published in Shelby County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender’s deed conveying the Property. Lender or its designee may purchase the Property at any sale.”
Additionally, the mortgage stated that SouthStar or MERS, “as nominee for [SouthStar’s] successors and assigns,” had “the right to foreclose and sell the Property.”
The Harrises began falling behind on their mortgage payments in 2007; the Harrises do not dispute that they failed to meet their mortgage obligations. Evidence in the record indicates that on March 20, 2008, Litton Loan Servicing LP (“Litton”)[1] sent a letter addressed to the Harrises at the property address informing the Harrises that they had “fallen behind on [their] mortgage payments.” The letter stated that Litton “would like to explore options that may be available to help preserve your home ownership,” and it provided contact information for Litton’s “Loss Mitigation Department.” The letter also stated that Litton “is a debt collector.” The Harrises deny receiving the March 20, 2008, letter or any other correspondence until they were served with the complaint in the instant ejectment action.
There also is evidence indicating that, on April 16, 2008, Litton sent a letter “on behalf of the owner and holder of your mortgage loan,” this one by certified mail to the property address, informing the Harrises that their mortgage was “in default for failure to pay amounts due.” The letter explained that to cure the default the Harrises “must pay all amounts due under the terms of your note and Deed of Trust/Mortgage.” It also related that if they failed to cure the default within 45 days of the date of the letter, “Litton will accelerate the maturity date on the Note and declare all outstanding amounts under the Note immediately due and payable.” The letter further stated that, “[u]pon acceleration of [the] Note, Litton will refer the property for foreclosure.”
On June 16, 2008, according to evidence in the record, Litton sent a letter to the Harrises at the property address that extended “a loan modification offer” to the Harrises. As with Litton’s first letter, this one contained contact information for Litton’s “Loss Mitigation Department.”
The record also contains evidence indicating that, on July 14, 2008, Colleen McCullough of the law firm of Sirote & Permutt, P.C., on behalf of the trustee, sent a letter addressed to the Harrises at the property address that noted that the Harrises’ mortgage had been “transferred and assigned to Deutsche Bank National Trust Company.” The letter stated that, “pursuant to the terms of the Promissory Note and Mortgage,” and “by virtue of default in the terms of said Note and Mortgage, [the trustee] hereby accelerates to maturity the entire remaining unpaid balance of the debt....” The letter provided the payoff amount as of the date of the letter, and it stated that the trustee was “at this time commencing foreclosure under the terms of the Mortgage.” The *486 letter indicated a copy of it had been provided to Litton.
Finally, the record also contains evidence indicating that, on December 29, 2008, McCullough, on behalf of the trustee, sent another letter to the Harrises at the property address, once again informing the Harrises that the note was being accelerated as a result of their default on the mortgage and that foreclosure proceedings were being initiated. The letter stated that a copy of the public foreclosure notice was enclosed with the letter and that the foreclosure sale was scheduled for February 3, 2009.
Public notices of the foreclosure sale were published on December 31, 2008, January 7, 2009, and January 14, 2009. The notices stated that the mortgage had been transferred to the trustee and that the “Mortgagee/Transferee” would sell the property on February 3, 2009. It also listed Sirote & Permutt, P.C., as the “Attorney for Mortgagee/Transferee.”
On January 8, 2009, MERS executed and delivered an assignment of the mortgage to the trustee. That assignment was recorded in the Shelby Probate Office on January 13, 2009.
On February 3, 2009, the trustee, through its attorney, conducted a foreclosure sale on the property. The trustee, as the highest bidder, purchased the property and obtained a foreclosure deed. The foreclosure deed stated that the mortgage executed by the Harrises on June 10, 2005, had “subsequently been transferred and assigned to [the trustee]” and that the trustee “was authorized and empowered in case of default in the payment of the indebtedness secured thereby ... to sell said property....” The foreclosure deed naming the trustee as the grantee was recorded in the Shelby Probate Office on February 12, 2009.
Also on February 3, 2009, McCullough, on behalf of the trustee, sent a letter to the Harrises at the property address demanding possession of the property based upon the foreclosure and informing the Harrises of their right of redemption.
On February 11, 2009, the trustee filed a complaint asserting a claim in the nature of ejectment against the Harrises in which it alleged that it was the “owner” of the property “by virtue of foreclosure on February 3, 2009.” The complaint noted that the trustee had served a written demand for possession upon the Harrises and that they had not vacated the property. The trustee attached a copy of the foreclosure deed to the complaint. The Harrises responded to the complaint on March 18, 2009, through a motion to dismiss or, in the alternative, for a more definite statement, in which they stated that they were “unable to file a complete answer without knowledge of the [the trustee’s] alleged standing.”
On March 30, 2009, the trustee filed a motion for a summary judgment along with an affidavit asserting the basis for the trustee’s ownership of the property. The Harrises did not file a response to the motion. On July 8, 2009, the trial court granted the trustee’s motion for a summary judgment and denied the Harrises’ motion to dismiss or motion for a more definite statement.
On August 3, 2009, the Harrises filed a motion to reconsider the order entering a summary judgment in favor of the trustee. The Harrises attached to the motion an affidavit from David Harris in which he averred that he had not had any dealings with the trustee but, rather, had always dealt with Litton regarding the mortgage. He also asserted that “Litton did not give us any notice of default or inform us that it had accelerated the mortgage and intended to foreclose.” Harris also claimed that *487 he and his wife did not receive a copy of the motion for a summary judgment.
On September 25, 2009, the trial court granted the Harrises’ motion to reconsider and vacated the summary-judgment order. It provided the Harrises 14 days to file a response to the motion for a summary judgment. On October 7, 2009, the Har-rises filed their response to the motion for a summary judgment in which they alleged that the trustee had not fulfilled the contractual notice requirements that ■ were conditions precedent to foreclosure. They also asserted that they had not been afforded the opportunity to conduct discovery concerning “the present holder of the underlying note.” The Harrises also filed an answer to the complaint and a counterclaim in which they asserted that they had not been given proper notice of: (1) any transfer of loan servicing; (2) default; (3) actions required to cure the default; and (4) the acceleration of the debt. The Har-rises claimed damages for “wrongful foreclosure.”
The trustee answered the counterclaim on November 24, 2009. On May 24, 2010, the trustee filed a motion to supplement its motion for a summary judgment, to which it attached copies of several letters sent from Litton to the Harrises and from McCullough to the Harrises. In an amended motion to supplement the motion for a summary judgment filed two days later, the trustee attached an affidavit from McCullough in which she confirmed that she had executed “two notices of default and acceleration letters” to the Har-rises, that the letters had been mailed in the regular course of business, and that they had not been returned as undeliverable.
On July 27, 2010, the trial court entered an order granting the trustee’s motion for a summary judgment. In part, the trial court found:
“2. The mortgage was ... assigned to [the trustee] on or about January 8, 2009.
“3. That the [trustee], as mortgagee, and with proper authority, conducted a foreclosure sale on or about February 3, 2009, with [the trustee] being the purchaser at said sale.
“4. Prior to said sale, proper notice was provided to the [Harrises] as required by the mortgage contract and state law.”
The trial court awarded immediate possession of the property to the trustee. • It also entered a summary judgment in favor of the trustee as to the Harrises’ counterclaim.
On August 19, 2010, the Harrises filed a motion to reconsider the summary judgment, which the trial court subsequently denied. The Harrises appealed that judgment, but this Court dismissed the appeal as being from a nonfinal judgment because of the trial court’s failure to adjudicate the trustee’s claim for damages. Harris v. Deutsche Bank Nat’l Trust (No. 1100307, March 1, 2011). On April 4, 2011, the trustee filed a notice withdrawing its claim for damages and requesting the entry of a final order. The trial court thereafter entered an order affirming its previous summary judgment in favor of the trustee and denying the trustee’s claim for damages.
The Harrises subsequently filed a motion to vacate the judgment pursuant to Rule 59(e), Ala. R. Civ. P. In that motion, the Harrises argued that the trustee had not demonstrated that it had obtained the foreclosure deed through a valid foreclosure sale because, they asserted, it was not entitled to the debt at the time it executed the power of sale. Along with their motion, the Harrises submitted what they termed “newly discovered evidence,” which included a copy of the trust “pooling ser *488 vices agreement” (“PSA”) related to their mortgage, a “Limited Power of Attorney” appointing Litton as attorney-in-fact for the trust, excerpts from a June 9, 2009, deposition of Denise Bailey in a Florida action,[2] and an affidavit dated February 11, 2011, from the in-house counsel of MERSCORP, Inc., the parent company of MERS, submitted in a New Jersey action.
Following a response filed by the trustee and a hearing on the motion, the trial court denied the Harrises’ Rule 59(e) motion. The order stated that the trial court had reviewed the parties’ arguments, but it made no reference to the Harrises’ “newly discovered evidence.” The Harrises appealed the trial court’s summary judgment in favor of the trustee.

II. Analysis

A. The Trustee’s “Initiation of Foreclosure Proceedings” Before Being Assigned the Mortgage
The Harrises argue that the trustee did not establish that it was either “the nominal mortgagee or [the] owner of the mortgage debt” until at least January 8, 2009, after it had accelerated the debt and stated in July 2008 that it was “commencing foreclosure under the terms of the Mortgage.” They contend that, because the trustee did not hold the power of sale associated with the mortgage when it “initiated foreclosure proceedings,” those proceedings were deficient and the foreclosure deed ultimately obtained by the trustee as the successful purchaser at the foreclosure auction is invalid. On this premise, the Harrises initially argue that the trustee lacked standing to bring its ejectment action against them. This same premise conflicts with the trial court’s existing finding on the merits of the ejectment claim that the trustee had “proper authority” to foreclose on the property and is urged by the Harrises as part of the framework for a reexamination of those merits, which it asks us to order on a remand of the case.
We reject the stated premise both as it relates to the issue of standing and to the merits of the trustee’s claim. As we explain in our separate decision issued today in Ex parte GMAC Mortgage, LLC, [Ms. 1110547, Sept. 13, 2013] — So.3d - (Ala.2013), the failure of a foreclosing party to have received an assignment of the mortgage (and by extension the power of sale attendant to the mortgage debt) before “the initiation of foreclosure proceedings” does not of itself invalidate the eventual conveyance of the property in foreclosure of the mortgagor’s rights. See also Ex parte BAC Home Loans Servicing, LP, [Ms. 1110373, Sept. 13, 2013] — So.3d -(Ala.2013) (holding that an issue such as that presented by the Har-rises goes to the merits of a foreclosure purchaser’s ejectment claim, not its “standing” to make that claim).

B. Other Alleged Deficiencies in the Foreclosure Process

As noted, the Harrises also challenge the summary judgment entered against them on the trustee’s ejectment action on its merits. They do so on the basis of various alleged deficiencies in the foreclosure process that they contend invalidate the foreclosure conveyance to the trustee and therefore the title to the property upon which the trustee bases its ejectment claim under § 6-6-280(b), Ala.Code 1975.
We first note that the Harrises raise an issue as to whether the notice of default and of the possibility of an acceleration of the loan and a sale of the property, as required by the mortgage, was given. We may assume for purposes of this issue that the trustee proved a prima facie *489 case for ejectment but that the Harrises introduced sufficient evidence to require the trustee to go beyond that proof and prove that the foreclosure conveyance to it was not invalid for failure of the above-described notice. Even so, the specific argument made by the Harrises in their brief as to this notice issue is merely that the trustee “failed to produce substantial evidence” tending to show that the required notice was given. We reject this argument.
The mortgage provides that “[a]ny notice to [the Harrises] in connection with this Security Instrument shall be deemed to have been given to [the Harrises] when mailed by first class mail or when actually delivered to [the Harrises’] notice address.” As we noted in our rendition of the facts, the record indicates that Litton sent the Harrises a letter via certified mail on April 16, 2008, notifying them of default on the mortgage and of an intent to accelerate if the default was not cured. The record contains a certified-mail receipt, bearing the stamp of the United States Postal Service and indicating that a letter was mailed on that date to the Harrises at the requisite notice address. The record also contains two letters dated July 14, 2008, and December 29, 2008, respectively, from McCullough on behalf of the trustee to the Harrises informing them that their loan was in default, that their payment obligations were being accelerated, and that foreclosure proceedings were being instituted. The record also contains an affidavit from McCullough in which she testifies that both of those letters were mailed by “placing [the] same in the United States mail, postage prepaid, on or about July 14, 2008 and December 29, 2008, respectfully.”[3]
“ ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’” Dow v. Alabama Democratic Party, 897 So.2d 1035, 1039 (Ala.2004) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). The record contains substantial evidence indicating that the required notice was given in accordance with the requirements of the mortgage contract. The Harrises’ argument to the contrary is without merit.
Next, the Harrises make two arguments based upon evidence they submitted in support of their Rule 59(e) motion to vacate the judgment of the trial court. First, based on their submission of the PSA, the Harrises contend that the trust was not allowed to acquire mortgage loans after November 22, 2005. Second, based on a deposition of Denise Bailey in a Florida action and an affidavit from the in-house counsel of MERSCORP, Inc., submitted in a New Jersey action, the Harris-es contend that MERS did not properly assign the mortgage to the trust.
As to the PSA, “[d]ocuments submitted in support of or in opposition to a summary-judgment motion are generally required to be certified or otherwise authenticated; if they are not, they constitute inadmissible hearsay and are not con *490 sidered on summary judgment.” Tanksley v. ProSoft Automation, Inc., 982 So.2d 1046, 1053 (Ala.2007). In addition, even if the PSA had been authenticated and it could not have been located by the Harris-es’ counsel with due diligence before the trial court entered the summary judgment, the Harrises failed to respond in both the trial court and in their briefs to this Court to the trustee’s argument that the Harris-es cannot enforce the terms of the PSA because they are neither parties to nor third-party beneficiaries of the PSA. See Ware v. Deutsche Bank Nat’l Trust Co., 75 So.3d 1168 (Ala.2011), (turning aside a similar argument by the mortgagor because he was neither a party to nor a third-party beneficiary of the PSA at issue). As in Ware, the Harrises’ argument based on the PSA is due to be rejected for failure to explain the basis on which they can invoke the PSA.
Furthermore, “[e]vidence submitted in an effort to revise an interlocutory summary judgment can be considered by the court if the nonmovant can offer a proper explanation for its failure to submit the evidence earlier, in response to the motion for summary judgment.” Hail v. Regency Terrace Owners Ass’n, 782 So.2d 1271, 1278 (Ala.1999). A Rule 59(e) motion does not, per se, operate to extend the time for filing affidavits or other material in opposition to a motion for a summary judgment. A party seeking to rely upon “newly discovered evidence” in support of a Rule 59(e) motion has the burden of showing “that the evidence submitted with his motion for reconsideration was ‘newly discovered evidence which by due diligence could not have been discovered’ before submission of defendants’ motion for summary judgment.” Moore v. Glover, 501 So.2d 1187, 1189 (Ala.1986) (emphasis omitted). In their Rule 59(e) motion, the Harrises’ only explanation as to why they were not able to submit much of their “newly discovered evidence” in response to the summary-judgment motion was that the evidence “was not located” until after the trial court granted the trustee’s summary-judgment motion. This is not an adequate explanation of why this evidence could not have been obtained or submitted earlier. Accordingly, the submission of this evidence does not require us to reverse the trial court’s judgment.
The Harrises also argue that the power of sale described in the mortgage was given by the Harrises as part of the security for the repayment of the debt evidenced by the note and can be “executed” only by the trustee if it was the party entitled to the money thus secured. They cite § 35-10-12, Ala.Code 1975, which states that the power to sell lands given in a mortgage “is part of the security and may be executed by any person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured.” In Carpenter v. First National Bank, 236 Ala. 213, 181 So. 239 (1938), this Court applied the predecessor to § 35-10-12, stating:
“A power of sale in a mortgage of real estate is a part of the security, and passes to any one who by assignment or otherwise becomes entitled to the money secured. Code 1923, § 9010.
“But an agent of such holder to whom the mortgage is delivered merely for the purpose of foreclosure, having no ownership of the debt, is not authorized to foreclose in his own name, and execute a deed in his name to the purchaser,[4] *491 Ownership of the debt does not pass to such agent merely because the note is indorsed in blank. Such foreclosure is ineffective, and a court of equity may take jurisdiction for the purpose of foreclosure.”
236 Ala. at 215, 181 So. at 240 (emphasis added). The foreclosure deed in this case was executed by the trustee in its own name, not on behalf of the lender, SouthS-tar, or any other party to which SouthStar may have assigned the note. The deed was effective to transfer title and to foreclose the rights of the mortgagor, therefore, only if the trustee, in its own name, was entitled to receive the money secured by the note at the time it executed and delivered that deed.
The parties agree in their briefs, however, and we accept for purposes of this case, that the mortgage given MERS “solely as a nominee for Lender and Lender’s successors and assigns” did not entitle MERS to the money secured by the mortgage. Accordingly, the subsequent assignment of that mortgage by MERS to the trustee did not accomplish an assignment of that right to the trustee. The trustee in fact concedes that summary judgment was inappropriate in this case and that on the state of the current record there is a genuine issue of material fact as to whether the trustee received an assignment of the note so as to have entitled it to execute the power of sale in its own name. (It asserts that, if this case is returned to the trial court, it will introduce “conclusive evidence” of its receipt as early as 2005 of the debt evidenced by the original note signed by the Harrises.) The summary judgment entered by the trial court therefore is due to be vacated and the case remanded for a determination as to whether the trustee received an assignment of the right to receive the money secured by the note, and thus the power to execute the corresponding power of sale in its own name, before executing and delivering the foreclosure deed.
Finally, the Harrises argue that the trial court erroneously entered a summary judgment in favor of the trustee on the Harrises’ counterclaim for “wrongful foreclosure.” We disagree in light of the following statement of law:
“Alabama has long recognized a cause of action for ‘wrongful foreclosure’ arising out of the exercise of a power-of-sale provision in a mortgage. However, it has defined such a claim as one where ‘a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor.’ Reeves Cedarhurst Dev. Corp. v. First American Fed. Sav. & Loan Ass’n, 607 So.2d 180, 182 (Ala.1992).”
Jackson v. Wells Fargo Bank, N.A., 90 So.3d 168, 171 (Ala.2012) (emphasis added).
In their “counterclaim,” the Harrises did not allege that the power of sale was exercised for any purpose “other than to secure the debt owed by [them].” Instead, their claim merely goes to whether the trustee complied with certain contractual or statutory prerequisites for a valid foreclosure. Therefore, the trial court did not err in entering a summary judgment on the Harrises’ counterclaim. '

III. Conclusion

For the reason discussed above, we vacate the summary judgment entered by the trial court in favor of the trustee on its claim for ejectment and remand this case to the trial court for further proceedings and for the entry of a new judgment consistent with this opinion. Specifically, we instruct the trial court to determine whether the trustee received an assignment of the right to receive the money *492 secured by the note, and thus the power to execute the corresponding power of sale in its own name, before executing and delivering the foreclosure deed. The trial court’s summary judgment in favor of the trustee on the Harrises’ counterclaim is affirmed.
JUDGMENT VACATED IN PART; AFFIRMED IN PART; AND REMANDED WITH INSTRUCTIONS.
MOORE, C.J., and STUART, BOLIN, SHAW, MAIN, WISE, and BRYAN, JJ„ concur.

. The Harrises acknowledge that Litton was the servicer of their loan and that they made their mortgage payments to Litton.

. Bailey was the MERS employee who had executed the assignment of the mortgage.

. The Harrises argue that McCullough is "not competent” to testify as to whether notice was mailed by Litton. Their only other challenge to McCullough’s testimony is that the only person who should be allowed to testify as to the "policy” of McCullough’s firm in regard to the mailing of default and acceleration notices and the compliance with that policy in this case is "the person whose duty it is actually to carry out the custom.” The Har-rises do not explain why McCullough is not that person. In any event, it does not appear that either of the objections now raised to McCullough's testimony was presented by the Harrises to the trial court.

. As discussed in Ex parte GMAC Mortgage, LLC, - So.3d -, it is the execution and delivery of a deed that "forecloses” the mortgagor's rights and vests the foreclosure purchaser with legal title sufficient to support an ejectment action under § 6-6-280(b).