PER CURIAM.
Diane Gray appeals from a summary judgment entered by the Jefferson Circuit Court (“the trial court”) in favor of the Federal National Mortgage Association (“Fannie Mae”). We reverse the trial court’s judgment.

Facts and Procedural History

On April 15, 2011, Fannie Mae filed a complaint against Gray asserting that, “by virtue of foreclosure on April 4, 2011, of that certain Mortgage originally between Diane Gray and Mortgage Electronic Registration Systems, Inc. acting solely as nominee for Irwin Mortgage Corporation subsequently transferred and assigned to EverHome Mortgage Company and further purchased by [Fannie Mae],” Fannie Mae is the owner of certain real property located in Jefferson County. Fannie Mae alleged that it had served a written demand for possession on Gray, that Gray had failed to vacate the property, and that Gray had lost her right to redeem the property. Fannie Mae requested possession of the property, money damages for the wrongful retention of the property, and an order stating that Gray had “forfeited her right to redemption for failing to vacate the property.” On May 18, 2011, Gray answered and asserted as an affirmative defense that the foreclosure was void.
On March 27, 2012, Fannie Mae filed a motion for a summary judgment, along with evidentiary materials in support thereof. Fannie Mae submitted the affidavit of Robin Murdock, vice president for “EverBank sbm Everhome Mortgage Company” (hereinafter referred to as “Ev-erBank” or “EverHome”), the servicer of the loan, in which Murdock stated, in pertinent part:
“3. In my present position, I have direct access to business records of Ev-erBank as loan servicer regarding the account which forms the basis of this action and am a custodian of said business records. I have reviewed said relevant business records, and consistent with my review of the business records of EverBank as loan servicer, I have knowledge of the facts set forth in this Affidavit.
“4. The business records were made in the ordinary course of the business and it was the regular course of said business to make such records. Said records relative to Defendant GRAY ... and this action, were made at the time of the transaction, occurrence or event referred to therein or were made within a reasonable time thereafter, and said records are kept under my care, supervision, and/or control.
“5. On or about January 30, 2004, GRAY entered into and executed that certain Note, in favor of Irwin Mortgage Corporation and its successors and assigns ....
“6. On or about January 30, 2004, GRAY entered into and executed that certain Mortgage, securing the Note, in favor of FANNIE MAE....
*827 “7. On May 10, 2007, Irwin Mortgage Corporation executed an Assignment of Mortgage to EverHome Mortgage Company (aka EverBank)....
“8. On November 4, 2010 and December 31, 2010, GRAY [was] sent a Notice of Default. This notice informed ... GRAY of [her] failure to make payments according to the terms of the Note and Mortgage and advised her of the possibility of foreclosure.... This notice was sent to the address recited in the Mortgage.
“9. On February 8, 2011, GRAY [was] sent a Notice of Acceleration at the address recited in the mortgage....
“10. The notice of foreclosure was published on February 9, 16, 23, and March 5, 2011, in The Alabama Messenger ....
“11. On April 4, 2011, the Mortgage was foreclosed through a valid foreclosure sale....
“12. By virtue of the April 4, 2011 foreclosure sale, FANNIE MAE was the highest and best bidder at the foreclosure sale and is the owner of the [property].
“13. On April 4, 2011, a demand for possession of the property was sent to ... GRAY at the property address set forth in the Mortgage....”
Fannie Mae also attached a note dated January 30, 2004, given by Gray in favor of Irwin Mortgage Corporation; a mortgage (“the mortgage”) relating to the property given by Gray to Mortgage Electronic Registration Systems, Inc. (“MERS”), acting solely as a nominee for Irwin Mortgage and its successors and assignees; an assignment of the mortgage from MERS, as nominee for Irwin Mortgage and its successors and assignees, to EverHome dated May 10, 2007; a letter dated November 4, 2010, notifying Gray that she was in default on her mortgage payments and that she had 20 days to get her account current or the mortgage would be foreclosed; a letter to Gray dated December 31, 2010, notifying her of her breach of the note and of the mortgage and stating that she must pay the amount of $21,094.53 in order to reinstate the loan and to avoid acceleration of the total amount due under the note and the mortgage; a letter dated February 8, 2011, notifying Gray that she was in default of the note and the mortgage and that Ever-Home was accelerating to maturity the entire unpaid balance of the loan; proof of publication of the notices in the Alabama Messenger, a newspaper of general circulation in Jefferson County; a foreclosure deed dated April 4, 2011, from EverHome to Fannie Mae, which states that the foreclosure sale occurred “at public outcry in front of the Courthouse door in Birmingham, Jefferson County, Alabama,” on that day “between the legal hours of sale” and which includes a certification from the auctioneer that the sale took place on that date at 11:33 a.m.; and a demand for possession of the property sent by Fannie Mae to Gray dated April 4, 2011.
On May 1, 2012, Gray filed her response to the summary-judgment motion, along with her affidavit in support thereof. In her affidavit, Gray averred, in pertinent part:
“I bought the property ... on January 30, 2004, and signed a promissory note with Irwin Mortgage Corporation and executed a mortgage with [MERS] as nominee for Irwin Mortgage Corporation. The note and mortgage are secured by the property.... The mortgage was recorded in the probate records of Jefferson County, Alabama. I am the sole owner of the property in which I currently reside.
“The mortgage and note [were] apparently transferred to EverHome Mortgage Company at some point thereafter; *828 although, I was never notified of said transfer. Prior to the foreclosure Ever-Home was acting as the servicer of my mortgage loan. The original terms of the note and mortgage required [me] to pay $708.59 each month which included escrow funds for taxes and insurance. My mortgage is a Fannie Mae mortgage and so states on the face of the document. In September 2007,1 lost my job due to company layoffs. As a result of my job loss, my household income significantly decreased, and I began having difficulty paying the mortgage payments. Because of the circumstances, I began seeking assistance from the mortgage company regarding my difficulty in making the monthly mortgage payments. In October 2007, I began contacting the mortgage company about making payment arrangements. I tried to get EverHome to assist me, but it refused so I was forced to file a chapter 18 bankruptcy petition on March 31, 2008 to save my home. While I was in Bankruptcy, I lost my job in October 2010, and had difficulty again making my mortgage payments and the bankruptcy payments. I got behind with the mortgage payments again and was sent a notice that EverHome intended to foreclose on my home. I again contacted the mortgage company in February 2011 in an effort to save my home and asked for HAMP [Home Affordable Modification Program] modification through EverHome’s loss mitigation program.
“In February and March 2011, I spoke to the mortgage company numerous times about a loan modification or work out plan through their loss mitigation program. They told me they would work with me and that I qualified for assistance and would get a loan modification. However, they did not follow through with assisting me, and I never got the loan modification to which I was promised. I could never get anyone to follow up with the modification despite my repeated calls to the mortgage company. I sent all the requested information to them; however, I never heard from them. I had to keep calling them back regarding my application for assistance. I was told by them that the foreclosure would not go forward as long as they were working with me through the loss mitigation program. Because of these communications with the lender, I was confused about the foreclosure procedure. Further, I relied upon these communications and believed that the mortgage company was working with me to help me keep my home and avoid foreclosure.
“Although, I was aware I was in foreclosure, I never received any notice that a foreclosure sale had been set for April 4, 2011. On Friday, April 1, 2011,1 was told by representatives of the mortgage company not to worry, that they were still reviewing my account for a loan modification and that they would postpone any sale until the review was finished. My first knowledge [of] the foreclosure sale was the morning of the sale (April 4, 2011) at approximately 9:00 a.m. when I called the mortgage company to check on the status of the mortgage and was advised that the house ... was set to be sold that day at noon and that there was nothing further that they could do to stop the foreclosure sale. They refused to offer me any further help to save my home. I went to the courthouse at approximately 11:20 am the morning of the sale and stood on the front steps of the main entrance of the Jefferson County Courthouse. I stayed there until after 12:30 p.m. and no one ever appeared there to [sell] my house. I later received a letter from the law office of Sirote & Permutt advising me *829 that the house had been sold and asking me to vacate the premises.
“I was never sent nor did I receive any proper notice of default or an opportunity to cure the delinquency. Furthermore, I was never provided with a notice of intent to accelerate as required by my mortgage contract. Paragraph 21 requires that the mortgage company send me a default notice and a notice of intent to accelerate the mortgage indebtedness. I was not provided with a notice of intent to accelerate stating the following elements: (a) the specific default, (b) the action required to cure the default, (c) a date by which to cure the default, and (d) that failure to cure the default on or before the date specified in the notice will cause acceleration of the debt. The notice was required by the mortgage, and was extremely important. I have a meritorious defense to this action. This property was wrongly foreclosed. Even if the mortgage contract is held to be valid, EverHome has failed to abide by the terms and conditions of the mortgage contract. Since its power of sale and ability to foreclose is conditioned upon the mandates and procedures of the contract, their failure to follow said contract renders the foreclosure sale invalid. EverHome wrongfully foreclosed and attempted to purchase for itself the property on April 4, 2011 without giving me a proper notice of the default, a notice of intent to accelerate, a notice of sale, and an opportunity to cure that default. Prior to acceleration of the debt, I did not receive the required notice outlined in the mortgage document that I was given on January 30, 2004.
“The indebtedness on the property at the time of the foreclosure sale was approximately $75,000.00. [Fannie Mae] bought the property from itself at the foreclosure sale for $73,185.89.
“Failure to set aside this foreclosure sale would render a harsh result on me due to my financial situation. I want to keep this property.”
Both parties moved to strike the affidavits submitted by the other party. On May 22, 2012, Fannie Mae filed a reply to Gray’s response to the summary-judgment motion. Fannie Mae attached an affidavit of the foreclosure-sale auctioneer averring that he had conducted the foreclosure sale on April 4, 2011, “at or about 11:33 AM during the legal hours of sale at the place appointed for foreclosure auctions in front of the main entrance to the Courthouse in Birmingham, Jefferson County, Alabama.”
After a hearing, the trial court entered a judgment on June 22, 2012, in favor of Fannie Mae, awarding possession of the property to Fannie Mae and ordering the Jefferson County sheriff to restore possession of the property to Fannie Mae. The trial court found that Gray had forfeited her right of redemption by failing to deliver possession of the property to Fannie Mae after having been given 10 days’ written notice. The trial court did not rule on the respective motions to strike. On July 25, 2012, Gray filed a postjudgment motion to alter, amend, or vacate the trial court’s judgment; Fannie Mae filed a response to the motion on September 4, 2012. Following a hearing, the trial court denied Gray’s postjudgment motion on September 6, 2012. On October 17, 2012, Gray filed her notice of appeal to this court. On May 22, 2013, this court transferred the appeal to the Alabama Supreme Court for lack of jurisdiction; that court subsequently transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7.

Standard of Review

“ ‘We review this case de novo, applying the oft-stated principles governing appellate review of a trial court’s *830 grant or denial of a summary judgment motion:
“ ‘ “We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.” ’
“American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala.2002) (quoting Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000) (citations omitted)).”
General Motors Corp. v. Kilgore, 853 So.2d 171,173 (Ala.2002).

Discussion

On appeal, Gray argues that the summary judgment entered by the trial court was improper because, she says, there were genuine issues of material fact in dispute. Specifically, she argues that there was no evidence indicating that EerHome was the owner of the note at the time of the foreclosure sale. We agree. The only evidence regarding the note is a copy of the note indorsed by the vice president of Irwin Mortgage; that indorsement is not dated and does not include the name of the assignee of the note. In Harris v. Deutsche Bank National Trust Co., 141 So.3d 482, 491 (Ala.2013), our supreme court reasoned:
“The Harrises also argue that the power of sale described in the mortgage was given by the Harrises as part of the security for the repayment of the debt evidenced by the note and can be ‘executed’ only by the trustee if it was the party entitled to the money thus secured. They cite § 35-10-12, AIa.Code 1975, which states that the power to sell lands given in a mortgage ‘is part of the security and may be executed by any person, or the personal representative of any person who, by assignment or otherwise, becomes entitled to the money thus secured.’ In Carpenter v. First National Bank, 236 Ala. 213,181 So. 239 (1938), this Court applied the predecessor to § 35-10-12, stating:
“ ‘A power of sale in a mortgage of real estate is a part of the security, and passes to any one who by assignment or otherwise becomes entitled to the money secured. Code 1923, § 9010.
“ ‘But an agent of such holder to whom the mortgage is delivered merely for the pmpose of foreclosure, having no ownership of the debt, is not authorized to foreclose in his own name, and execute a deed in his name to the purchaser. Ownership of the debt does not pass to such agent merely because the note is indorsed in blank. Such foreclosure is ineffective, and a court of equity may take jurisdiction for the purpose of foreclosure.’
“236 Ala. at 215, 181 So. at 240 (emphasis added). The foreclosure deed in this case was executed by the trustee in its own name, not on behalf of the lender, SouthStar, or any other party to which SouthStar may have assigned the note. The deed was effective to transfer title and to foreclose the rights of the mortgagor, therefore, only if the trustee, in its own name, was entitled to receive the *831 money secured by the note at the time it executed and delivered that deed.
“The parties agree in their briefs, however, and we accept for purposes of this case, that the mortgage given MERS ‘solely as a nominee for Lender and Lender’s successors and assigns’ did not entitle MERS to the money secured by the mortgage. Accordingly, the subsequent assignment of that mortgage by MERS to the trustee did not accomplish an assignment of that right to the trustee. The trustee in fact concedes that summary judgment was inappropriate in this case and that on the state of the current record there is a genuine issue of material fact as to whether the trustee received an assignment of the note so as to have entitled it to execute the power of sale in its own name. (It asserts that, if this case is returned to the trial court, it will introduce ‘conclusive evidence’ of its receipt as early as 2005 of the debt evidenced by the original note signed by the Har-rises.) The summary judgment entered by the trial court therefore is due to be vacated and the case remanded for a determination as to whether the trustee received an assignment of the right to receive the money secured by the note, and thus the power to execute the corresponding power of sale in its own name, before executing and delivering the foreclosure deed.”
(Footnote omitted.) See also Ex parte BAC Home Loans Servicing, LP, [Ms.1110873, Sept. 13, 2013] — So.3d —, — (Ala.2013) (holding that the right of the foreclosing entity to conduct a foreclosure sale must be proven in order to show that the buyer at a foreclosure sale has superior legal title and a cause of action to eject the debtor). Further, in Coleman v. BAC Servicing, 104 So.3d 195 (Ala.Civ.App.2012), this court explained:
“Alabama law specifically contemplates that there can be a separation. See § 35-10-12 and Hartón [v Little, 176 Ala. 267, 57 So. 851 (1911) ]. The Restatement (Third) of Property: Mortgages takes the position that a note and mortgage can be separated but that ‘[t]he mortgage becomes useless in the hands of one who does not also hold the obligation because only the holder of the obligation can foreclose.’ Restatement (Third) of Property: Mortgages § 5.4, Reporter’s Note — Introduction, cmt. a at 386. The Restatement explains: ‘ “The note is the cow and the mortgage the tail. The cow can survive without a tail, but the tail cannot survive without the cow.” ’ Id. at 387 (quoting Best Fertilizers of Arizona, Inc. v. Bums, 117 Ariz. 178, 179, 571 P.2d 675, 676 (Ct.App.), reversed on other grounds, 116 Ariz. 492, 570 P.2d 179 (1977)).”
104 So.3d at 205.
Similar to Harris, in the present case “the mortgage given MERS ‘solely as a nominee for [Irwin Mortgage] and [Irwin Mortgage’s] successors and assigns’ did not entitle MERS to the money secured by the mortgage. Accordingly, the subsequent assignment of that mortgage by MERS to [EverHome] did not accomplish an assignment of that right to [Ever-Home].” Id. at 485. EverHome presented no evidence indicating that the note had been transferred “by delivery of possession or by written assignment.” Coleman v. BAC Servicing, 104 So.3d at 203 (“The promissory note evidencing that debt was a bearer instrument that could be transferred in two ways: by delivery of possession or by written assignment.”); see also Ala.Code 1975, § 8-5-24 (“The transfer of a ... note given for the purchase money of lands, whether the transfer be by delivery merely or in writing, expressed to be with or without recourse on the transferor, passes to the transferee the lien of the vendor of the lands.”). “ ‘[0]nly the holder *832 of the obligation can foreclose.’ ” Coleman, 104 So.3d at 205. Because there was no evidence presented that EverHome, the foreclosing entity, was the holder of the note at the time of the foreclosure sale, we conclude that, like in Harris, the summary judgment entered in the present case was improper.
Gray makes several other arguments regarding the propriety of the summary judgment and the denial of her motion to strike. Because we are reversing the summary judgment on the merits, we preter-mit discussion of those arguments. See Crews v. McLing, 38 So.3d 688, 696 (Ala.2009).
Based on the foregoing, we reverse the summary judgment and remand this cause for further proceedings.
REVERSED AND REMANDED.
PITTMAN, MOORE, and DONALDSON, JJ, concur.
THOMPSON, P.J., concurs in the result only, with writing, which THOMAS, J., joins.