MAIN, Justice.
Matador Holdings, Inc., d/b/a Davis-Dyar Supply Company (“Matador”), and HoPo Realty Investments, L.L.C. (“HoPo”), have filed separate appeals challenging elements of an order entered by the Lee Circuit Court in a proceeding involving commercial property owned by HoPo. Matador, which is in the business of selling building materials, sued HoPo and HoPo’s lessee, Stratford Plastic Components of Alabama (“Stratford”), seeking payment for materials and services Matador provided Stratford at commercial property owned by HoPo.[1] The issues at trial and to be resolved on appeal center around a materialman’s lien and a claim of unjust enrichment. We consolidated the appeals for the purpose of writing one opinion.

*141
Factual Background and Procedural History

On or about December 12, 2008, Strat-ford entered into an agreement to lease a commercial structure from HoPo.[2] The structure had previously been used as a warehouse, but Stratford intended to use it as an extruded-plastics manufacturing facility. The lease agreement provided that Stratford was to “use the premises for manufacturing, storage, and distribution of plastic components, and for no other use.” The lease agreement provided for tenant alterations and improvements to the property, as follows:
“No alterations or improvements will be made by [Stratford] without [HoPo’s] prior written consent. Such consent will not be unreasonably withheld.
“If [HoPo] consents, [Stratford] has the right to perform alterations and improvements anytime during the term of this lease.
“But, in all cases, [HoPo] will not consent to such installation, alterations, or improvements until the following conditions have been met before work begins: “[Stratford] submits plans to [HoPo] bearing a licensed architect’s or engineer’s stamp.
“The construction must be performed by contractors suitable to [HoPo]. All contractors must have local business licenses, and provide to [HoPo’s agent] proof of liability, and workman’s compensation insurance coverage.
“All work will be done in a good and workmanlike manner and in compliance with any applicable governmental rules and regulations and the cost thereof will be paid by [Stratford] in cash or in equivalent, so that the leased premises will at all times be free of liens for labor and materials supplied or claimed to have been supplied to the leased premises. Any alterations and improvements other than trade fixtures will immediately become the property of [HoPo], subject only to the use of same by [Strat-ford] during the term of this lease.
“Trade fixtures are the personal property of [Stratford]. [Stratford] may remove trade fixtures when [Stratford] vacates the premises. If [Stratford] does not remove trade fixtures upon vacating the premises, then [HoPo], at [its] sole discretion, may have the fixtures removed on behalf of [Stratford]. In all cases, [Stratford] will bear the full cost, including labor and materials, of removing trade fixtures and repairing any damage caused by such removal.”
The lease agreement further provided:
“Nothing contained in this lease will authorize [Stratford] to do any act which may create or be the foundation for any lien, mortgage or other encumbrance upon the reversion or other estate of [HoPo], or of any interest of [HoPo] in the leased premises or upon in [sic] the building or improvements thereof; it being agreed that should [Stratford] cause any alterations, changes, additions, improvements or repairs to be made to the leased premises, or cause materials to be furnished or labor to be performed therein or thereon, neither [HoPo] nor the leased premises will, under any circumstances, be liable for the payment of any expense incurred or for the value of any work done or material furnished to the leased premises or any part thereof. [Stratford] will upon request deliver such documents as may be required by [HoPo] in order to effectuate the lien *142 protection required by this paragraph; all such alterations, changes, additions, improvements and repairs and materials and all labor will be at [Stratford’s] expense and [Stratford] will be solely and wholly responsible to contractors, laborers and materialmen furnishing labor and material to said premises and building or any part thereof. If, because of any act or omission of [Stratford], any mechanic’s or other lien or order for the payment of money will be filed against the leased premises or any building or improvement thereon, or against [HoPo] (whether or not such lien or order is valid or enforceable as such),
“[Stratford] will, at [Stratford’s] own cost and expense, within fifteen (15) days after the date of filing thereof, cause the same to be canceled and discharged of record, or furnish [HoPo] with a surety bond issued by a surety company reasonably satisfactory to [HoPo], protecting [HoPo] from any loss because of nonpayment of such lien and further will indemnify and save harmless [HoPo] from and against any and all costs, expenses, claims, losses or damages, including reasonable counsel fees, resulting thereupon or by reason thereof.” [3]
The lease agreement contained provisions allowing for HoPo and/or its agents to enter the property during the term of the lease for matters such as inspections or making repairs or additions or alterations to the property.
Stratford had applied for and been given a line of credit with Matador in September 2008. After taking possession of the leased property, Stratford ordered from Matador materials to be used to convert the leased property to a facility suitable for Stratford’s production needs. The materials and interest/finance charges incurred pursuant to the credit agreement totaled $59,057.62. Stratford apparently converted the leased property to a manufacturing facility but vacated the property before the lease term expired without paying Matador for the materials.
Howard Porter testified that he was a member of HoPo and also of Porter Properties, LLC, which was the rental agent for the leased property. Porter stated that the lease was an “as-is” lease and that Stratford did not request that HoPo make any changes to the building for it to enter into the lease agreement. Porter testified that the property manager went to the property during the term of the lease to attempt to collect the rent payment and that Stratford was behind on its rent “pretty much from the beginning.” Porter also testified that the leasing agent likely went to the property a few times but that he was not certain because that individual left Porter Properties’ employment shortly after the lease agreement was signed.
Porter testified that Tracey Davis Allen, the owner of Matador, contacted him by telephone and informed him that Stratford had not paid for materials Matador had supplied to convert the leased property to a production facility. Porter stated that after receiving the telephone call from Allen, “we notified [Stratford] that [it] need *143 ed to clean that up under the terms of the lease.”
Porter further testified that he had no knowledge before the lease agreement was signed that Matador was going to supply materials to the leased property. He stated that, even though it was not unusual to receive notice from a supplier that work was being performed on a leased property or that materials were being supplied to that property, they did not receive any such notice from Matador in this case. Porter further stated that Stratford did provide a “rough layout of the office [partition], office area that was being added” but that he did not believe that any blueprints for electrical installations or any plans bearing the stamp of a licensed architect or engineer were ever provided to HoPo. Porter testified that Stratford did not seek approval from HoPo to allow Matador to perform any work or to supply materials. Porter claimed that the only knowledge he had that Matador had provided any materials to Stratford at the leased property was the telephone call from Allen and a lien subsequently filed by Matador. Porter stated that he never agreed to pay for any materials supplied to Stratford and that when the topic was brought up by Allen he told her that payment for the materials was between her and Stratford.
Porter further testified that he told either Allen or an independent contractor who performed the work converting the leased property that Matador was welcome to retrieve any of the materials it had supplied, provided that it caused no damage to the structure of the building in retrieving the materials. He reiterated that position at trial.
According to Porter, the property has been shown to several prospective tenants since Stratford’s departure, but the property had not been leased. He stated that some of the alterations that were performed could be viewed as beneficial to some potential tenants but detrimental to other potential tenants. Further, Porter testified that substantial work would have to be performed to prepare the property before another tenant could move in because of the condition of various piping, conduits, etc., that remained after Strat-ford vacated the premises.
Allen testified that she was the owner of Matador. She stated that all the materials ordered by Stratford either were delivered from Matador’s facility to the leased property by one of Matador’s delivery trucks or were shipped directly from a supplier/manufacturer to the leased property.
According to Allen, she telephoned Porter around the same time Matador was filing a materialman’s lien on the building in March 2009 for the materials Matador had supplied. She stated that Porter informed her that Stratford had not defaulted on its rent to HoPo at that point. Allen testified that Porter told her she should seek legal counsel. Allen further testified that she told Porter that HoPo would likely be brought into the matter and that she already had an attorney and was proceeding with the legal process.
Allen informed the trial court that Matador’s invoices spanned the period from approximately November 2008 to March 2009 and that, at the time she spoke with Porter and filed the lien, Matador had provided all the materials for which it now seeks compensation. According to Allen, Matador sells new building materials and does not have any market for or use for used building materials. Matador presented unpaid invoices totaling $47,915.24 for materials provided to Stratford for converting the leased property.
George Dyar testified that he was a former owner of Matador and that he continued to assist the company on an as- *144 needed basis. Dyar testified that he visited the premises before Stratford moved in, and he discussed the types of upgrades in lighting, electrical, heating and cooling, piping, etc., that needed to be performed to convert the building from a warehouse facility to a production facility.
Dyar testified that the upgrades in lighting would be beneficial to a tenant other than Stratford. He further testified that the piping for compressed air systems and the added electrical work would be beneficial for many other potential production tenants but would not be beneficial to potential warehouse tenants. Dyar testified that he believed the piping system could be removed without damaging the building and that, although other materials Matador had supplied could be removed without damaging the building, they were of no use to Matador once they were removed.
Mike Carter testified that he was employed by Porter Properties and that he was the property manager for the leased property. He testified as to his efforts to lease the property after Stratford’s departure.
All the testimony at trial indicated that nobody from Matador had informed anyone at HoPo that Matador would be supplying materials for Stratford to use in converting the leased property. By all accounts, it appears that the first knowledge HoPo had that Matador had supplied any materials to Stratford was in March 2009, when Allen telephoned Porter and the materialman’s lien was filed.
After hearing testimony and accepting evidence and briefs from Matador and HoPo, the trial court entered an order resolving the claims between Matador and HoPo, as follows:
“IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Matador’s judgment against the Stratford Defendants previously entered by the Court is SECURED by a lien arising under § 35-11-212, Ala.Code (1975), which attaches to the goods and materials furnished by Matador to Stratford and incorporated into the Warehouse, but only to the extent that such goods and materials can be identified and removed from the Warehouse without damage to the Warehouse or the real property on which it is situated. HoPo shall permit Matador to enter the Warehouse after notice to HoPo for the purpose of removing such goods and materials, which Matador may then sell in the manner provided for by law.
“IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Matador’s judgment against the Stratford Defendants previously entered by the Court is also SECURED by a lien which attaches to the unexpired term of the Lease between HoPo and [Stratford], and which may be executed upon only in the manner specified, and in accordance with the procedures set forth, in § 35-11-212, Ala.Code (1975).
“IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, except as specifically allowed and declared in this Judgment, the lien claimed by Matador in its Verified Statement of Lien recorded at Mise. Book 1289, at Page 45, in the Office of the Judge of Probate for Lee County, Alabama, is null and void, and does not attach to any other real or personal property, or any interest therein.
“IT IS FURTHER HEREBY ORDERED, ADJUDGED, AND DECREED that Matador’s claim of unjust enrichment against HoPo is due to be *145 and the same is hereby DENIED.”[4]
(capitalization in original.)
Matador filed a postjudgment motion to vacate or amend the judgment, and HoPo filed a response. Matador’s postjudgment motion was deemed denied pursuant to Rule 59.1, Ala.R.Civ.P., after 90 days. These appeals followed.

Standard of Review

“Because the trial court heard ore tenus evidence during the bench trial, the ore tenus standard of review applies. Our ore tenus standard of review is well settled. ‘ “When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.”’ Smith v. Muchia, 854 So.2d 85, 92 (Ala.2003) (quoting Allstate Ins. Co. v. Skelton, 675 So.2d 377, 379 (Ala.1996)).
“ ‘ “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). The rule applies to “disputed issues of fact,” whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672 (Ala.1995). The ore tenus standard of review, succinctly stated, is as follows:
“ ‘ “[Wjhere the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court’s conclusion on issues of fact, and this Court will not disturb the trial court’s conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.” ’
“Reed v. Board of Trs. for Alabama State Univ., 778 So.2d 791, 795 (Ala. 2000) (quoting Raidt v. Crane, 342 So.2d 358, 360 (Ala.1977)). However, ‘that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.’ Ex parte Board of Zoning Adjustment of Mobile, 636 So.2d 415, 417 (Ala.1994).”
Kennedy v. Boles Invs., Inc., 53 So.3d 60, 67-68 (Ala.2010).

Unjust-Enrichment Claim (Case no. 1091700)

Matador argues that the trial court erred in denying its claim that it was entitled to recover from HoPo under the theory of unjust enrichment. HoPo argues that the facts do not establish the elements of an unjust-enrichment claim.
“To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation. See American Family Care, Inc. v. Fox, 642 So.2d 486, 488 (Ala.Civ.App.1994).”
Portofino Seaport Vill., LLC v. Welch, 4 So.3d 1095, 1098 (Ala.2008).
“ ‘One is unjustly enriched if his retention of a benefit would be unjust.’ Jordan v. Mitchell, 705 So.2d 453, 458 (Ala.Civ.App.1997) (citing Restatement of Restitution: Quasi Contracts and Con *146 structive Trusts, § 1, Comment c. (1937)). The Jordan court continued:
“ ‘Retention of a benefit is unjust if (1) the donor of the benefit ... acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit ... engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been unjustly enriched.’
“705 So.2d at 458.”
Welch v. Montgomery Eye Physicians, P.C., 891 So.2d 837, 843 (Ala.2004).
There was no evidence indicating that Matador made a mistake of fact in providing the materials to the project, nor is there any evidence indicating that HoPo purported to accept any responsibility or liability for those materials to induce Matador to provide the materials to Stratford. To the contrary, it is clear from the record that HoPo was not aware that Matador had supplied the materials until after Matador had fulfilled all Stratford’s orders and the conversion of the facility was completed. Further, the testimony indicated that although some of the improvements may be beneficial to another prospective tenant, some of the improvements would be suitable only for production tenants and even then only to a portion of that type of tenant. Finally, HoPo has offered to allow Matador to remove from the leased property any materials it supplied that could be removed without damage to the building. In short, there was conflicting evidence as to whether HoPo knowingly obtained the benefit or whether it is insisting on retaining that benefit. There is, however, evidence to support the trial court’s judgment; therefore, the trial court’s judgment is affirmed.

Materialman’s Lien (Case no. 1091790)

HoPo argues that the trial court erred in enforcing Matador’s material-man’s lien on the leased property because, it says, Stratford violated terms of the lease agreement concerning the procedures for improving or altering the property and thereby caused the lien to arise.
Matador argues that it is clear from the terms of the lease agreement that HoPo was aware that Stratford was going to be converting the building from a warehouse facility to a production facility. Matador also avers that Stratford provided HoPo with a blueprint or floorplan of the proposed construction at the time Stratford entered into the lease agreement. Matador further asserts that HoPo had actual knowledge of the improvements because employees or agents of HoPo went to the premises on multiple occasions to collect rent.
Section 35-11-212, Ala.Code 1975, provides for liens against leased lands, as follows:
“(a) When the building or improvement is erected under or by virtue of any contract with a lessee in possession, and the erection thereof is not in violation of the terms or conditions of the lease, the lien shall attach to such building or improvement, and to the unexpired term of the lease, and the holder of the lien shall have the right to avoid a forfeiture of the lease by paying rent to the lessor, as it becomes due and payable, or by the performance of any other act or duty to which the lessee may be bound; and if the lien is enforced by a sale of the building or improvement, the purchaser may, at his election, become entitled to the possession of the demised premises, and to remain therein for the *147 unexpired terra, by paying rent to the lessor, or performing any other act or duty to which the lessee was bound, as if he were the assignee of the lease; or he may, within 60 days after the sale, remove such building or improvement from the premises; and if he elects to take possession and to remain therein until the expiration of the term of the lease, he may, within a reasonable time after the expiration of the term, remove such building or improvement from the premises. If, before a sale, the holder of the lien has made any payments of rent, or other pecuniary compensation to the lessor, which ought to have been paid by the lessee, he shall be reimbursed for such payments from the proceeds of the sale.
“(b) When a lien attaches under subsection (a), the lessor, at any time before a sale of the property, shall have a right to discharge the same, by paying to the holder the amount secured thereby, including costs and all moneys he may have paid to the lessor to prevent a forfeiture of the lease, and, after a sale, he shall have the right to prevent the removal of the building or improvement from the premises by paying to the purchaser the value of such building or improvement; and upon such payment, either to the holder of the lien or to the purchaser, such building or improvement shall become the property of the lessor.”
(Emphasis added.)
It is clear that HoPo was aware that some construction on the building would be required to make the building suitable for Stratford’s needs. The undisputed evidence indicated that Stratford provided a “floor plan” of its intended additions to the office-space portion of the building. However, the evidence is equally undisputed that many terms of the lease agreement, e.g., requiring plans bearing a licensed architect’s or engineer’s stamp, proof of licenses and insurance from the contractors performing the work, and payment by Stratford for the materials and construction in cash or the equivalent to avoid any liens, were not fulfilled.[5] Thus, because Stratford violated the terms of its lease in the manner in which it obtained the additions to the leased premises, we cannot hold that Matador’s lien against HoPo’s property is proper. Thus, the trial court erred in upholding the lien in this regard.

Conclusion

We affirm the trial court’s denial of Matador’s unjust-enrichment claim against HoPo in case no. 1091700. We hold that the trial court should have found the mate-rialman’s lien filed by Matador pursuant to § 35-11-212, Ala.Code 1975, unenforceable. Therefore, in case no. 1091790 we reverse the trial court’s order insofar as it enforces any portion of the lien against HoPo’s property or the improvements to that property, and we remand the case for that court to enter an order declaring that lien void.
1091700 — AFFIRMED.
1091790 — REVERSED AND REMANDED WITH DIRECTIONS.
WOODALL, BOLIN, and SHAW, JJ., concur.
MURDOCK, J., concurs in the result.

. Matador’s claims against Stratford and HoPo’s cross-claims against Stratford were resolved before trial, and consent judgments were entered as to those claims. Nothing in this opinion impacts those consent judgments.

. The lease was scheduled to begin on December 15, 2008, and end on December 31, 2013.

. The lease agreement contained a "Captions” section, which provides that ”[t]he paragraph captions contained herein are for convenience only and do not define, limit or construe the contents of such paragraphs and are in no way to be construed as a part of this lease.” The text in the above-quoted hold-harmless paragraphs clearly included situations involving additions or improvements. Thus, although the above-quoted hold-harmless paragraphs were included in the section of the lease agreement captioned "Maintenance and Repair of the Leased Premises,” their placement there does not impact our review of the language in those paragraphs.

. Consent judgments were also entered against Stratford in the amount of $68,934.24 for Matador and $790,043.16 for HoPo (see supra note 1). Those amounts included principal and attorney fees, as well as compensatory damages and/or interest.

. We need not resolve the factual dispute regarding whether Stratford had also breached the terms of its lease regarding its monetary obligations to HoPo at the time the materials were supplied by Matador.