Rel: December 19, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

––––––––––––––––––––

## SC-2025-0014

––––––––––––––––––––

## Miguel A. Laborde and Himelda Johanna Cruz-Candelo

## v.

## Citizens Bank, N.A.

## Appeal from Madison Circuit Court
## (CV-23-900301)

COOK, Justice.[1]

––––––––––––––––

[1]This case was originally assigned to another Justice on this Court. It was reassigned to Justice Cook on August 22, 2025.

In 2015, Miguel A. Laborde took out a loan to finance the purchase of a home for him and his wife, Himelda Johanna Cruz-Candelo. In turn, they granted a mortgage on the property to secure the loan. The subject loan was guaranteed and insured by the United States through the Housing Loan Program of the Department of Veterans Affairs ("the VA"), which is designed to help veterans secure home ownership while minimizing the risk of foreclosure. Because Laborde was a veteran, he qualified for this loan program.

In 2022, after encountering difficulty making their monthly payments, they defaulted on the loan. As a result, Citizens Bank, N.A. ("the Bank"), began foreclosure proceedings. Laborde and Cruz-Candelo sought to stave off those proceedings by offering to bring the loan current before the sale, which they believed was their right under the mortgage contract.

Despite their efforts to do so, Laborde and Cruz-Candelo say the Bank refused to let them get current on the loan and sold the property to third-party purchasers. Moreover, Laborde and Cruz-Candelo argue that the amount received by the Bank at foreclosure was more than was owed on their loan and yet the Bank has failed to pay this surplus to them.

2

The third-party purchasers filed an ejectment action against them in the Madison Circuit Court. Laborde and Cruz-Candelo defended against that action and brought claims of their own against both the Bank and the third-party purchasers. The trial court, however, entered a judgment that, among other things, dismissed all of Laborde and Cruz-Candelo's claims against them.

Laborde and Cruz-Candelo now appeal that judgment to this Court. Laborde and Cruz-Candelo's claim against the third-party purchasers has now been settled. They repurchased their house from the third-party purchasers by paying even more than the foreclosure price. While the ejectment is therefore no longer the subject of this appeal, the reinstatement of their claims against the Bank remains at issue.

They ask this Court to reinstate four of the five claims they brought against the Bank. The trial court erred in dismissing three of them. For the reasons stated below, we affirm in part, reverse in part, and remand.

<u>Facts and Procedural History</u>

<u>I. The Subject Loan</u>

Laborde and Cruz-Candelo purchased a residential property located on Heritage Mill Drive in Madison on November 19, 2015.

Laborde obtained a loan in the amount of $416,150 from North Alabama

Mortgage, Inc., to finance the purchase of the house.

As stated previously, the subject loan was guaranteed and insured

by the United States through the Housing Loan Program of the VA. The

loan was issued subject to the terms, conditions, and restrictions set by

the Secretary of Veterans Affairs, including those set forth in 38 U.S.C. §

3703 and the corresponding federal regulations.

Those statutes and regulations require lenders and their agents to

conduct meaningful preforeclosure-default servicing in an effort to avoid

foreclosure. Consistent with those requirements, the mortgage and the

promissory note expressly obligate the lender to engage in such servicing.

In addition, the mortgage contract contains a provision that refers to the

governing VA regulations, providing that any inconsistent loan terms are

automatically "conform[ed]" to the applicable VA regulations.[2]

---

[2]Specifically, the mortgage contract includes the following provision:

"Department of Veterans Affairs regulations at 38 C.F.R. 36.4337 provide as follows:

"'Regulations issued under 38 U.S.C. Chapter 37 and in effect on the date of any loan which is submitted and accepted or approved for a

The day Laborde obtained the subject loan, Laborde and Cruz-Candelo executed a promissory note in favor of North Alabama Mortgage for the loan amount. To secure the note, Laborde and Cruz-Candelo granted a mortgage on the property, naming North Alabama Mortgage as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS"), as the mortgagee and nominee for the lender. Again, on the same date, North Alabama Mortgage executed an allonge endorsing the note to Franklin American Mortgage. Laborde alleges that, at some point thereafter, the Bank took over the servicing of their loan: collecting payments from them, sending them to the lender, and handling administrative aspects of the loan.

## II. Laborde's Struggle to Make Payments on the Subject Loan and the Underlying Foreclosure Sale

In 2021, Laborde's employment situation changed dramatically. He had been involved in work connected with government contracting, but when the United States abruptly withdrew from Afghanistan in 2021,

---

guaranty or for insurance thereunder, shall govern the rights, duties, and liabilities of the parties to such loan and any provisions of the loan instruments inconsistent with such regulations are hereby amended and supplemented to conform thereto .'"

many of those contracts fell through. This created financial instability, and by 2022 Laborde was having difficulty making his monthly mortgage payments.

In response to Laborde's failure to pay, the Bank accelerated the note and set a foreclosure sale for February 21, 2023. Laborde claims that, more than five days before the foreclosure sale, he contacted the Bank to reinstate the mortgage. According to Laborde, he spoke with a Bank employee, who informed him that to bring the loan current he would be required to pay $31,252.32 in arrearages, $2,022.78 in miscellaneous fees, and $5,175.53 in late fees, totaling approximately $38,450. He asserts that he was prepared to wire this amount immediately and tender full payment. However, the Bank allegedly refused to accept the funds directly. Instead, the Bank employee instructed Laborde to contact the foreclosure law firm handling the matter -- Rubin Lublin, LLC.

Laborde maintains that he promptly called Rubin Lublin, left a detailed voicemail explaining that he wished to pay the full reinstatement amount immediately, and requested wiring instructions. He also submitted a written inquiry through the firm's website asking

for someone to contact him so that the payment could be completed. Laborde contends that he never received a return call or response from the law firm and that no wiring instructions were ever provided. He asserts that the Bank, despite knowing of his willingness to cure the default in full, refused to accept payment and pressed forward with foreclosure.

The foreclosure sale was conducted on February 21, 2023. At the sale, the property was purchased by third parties for $480,000, an amount that Laborde and Cruz-Candelo allege was substantially less than its fair market value, which, he claims, an appraisal showed was closer to $625,000. Laborde and Cruz-Candelo state they were both out of the country at the time of the foreclosure sale and that they did not receive adequate notice to vacate the premises or to preserve and exercise their statutory right of redemption. On March 6, 2023, a foreclosure deed was executed to the purchasers.

### III. The Underlying Ejectment Action and Laborde and Cruz-Candelo's Claims

Following the foreclosure sale, the third-party purchasers filed an action seeking to eject Laborde and Cruz-Candelo from the house. Laborde and Cruz-Candelo responded by raising affirmative defenses to

the allegations in the complaint and bringing a counterclaim against the third-party purchasers. They also brought in the Bank as a third-party defendant to the action and alleged four claims against it as well.

First, Laborde and Cruz-Candelo alleged that the Bank breached the duty of good faith and fair dealing. They claimed that the Bank breached those duties by refusing their timely effort to reinstate and by proceeding with foreclosure despite Laborde's readiness to cure the default. They further alleged that conducting a foreclosure sale under those circumstances, and at a price substantially below market value, was unconscionable and inconsistent with good faith and fair dealing.

Next, Laborde and Cruz-Candelo alleged a breach-of-contract claim against the Bank. According to them, the Bank did not comply with the notice provision of the mortgage contract, which was a condition precedent to foreclosure. They further alleged that the Bank did not comply with the regulations applicable to VA-guaranteed loans and that those failures deprived the Bank of any contractual or legal authority to conduct the foreclosure sale. They finally alleged that the Bank likewise failed to honor Laborde's right under the mortgage contract to reinstate the mortgage before acceleration and sale.

Laborde and Cruz-Candelo further asserted a claim of wrongful foreclosure. They alleged that the Bank's foreclosure proceedings were negligent, wanton, or intentional and that the power of sale was exercised for a purpose other than securing the debt owed. They also argued that the Bank was not the party to whom the debt was owed at the time of sale.

Laborde and Cruz-Candelo also sought to redeem the property from the third-party purchasers. They argued that they did not receive proper notice and that their right to redeem should be upheld.

Finally, Laborde and Cruz-Candelo requested declaratory relief, asking the trial court to declare that the Bank lacked the right to foreclose and that the foreclosure was therefore invalid.

<u>IV. The Bank and the Third-Party Purchasers' Motions to Dismiss and the Trial Court's Judgment</u>

On March 21, 2024, the trial court dismissed all claims against both the Bank and the third-party purchasers. One week later, Laborde and Cruz-Candelo amended their claims pursuant to Rule 78, Ala. R. Civ. P., which permits amendment as of right within 10 days of an order granting a motion to dismiss.

In their amended pleading, Laborde and Cruz-Candelo pleaded

9

some more specific factual allegations in a few places and added a claim of unjust enrichment against the Bank. The five original claims remained the same.

On October 3, 2024, the trial court entered a summary judgment for the third-party purchasers on their ejectment claim and dismissed all of Laborde and Cruz-Candelo's claims against both parties, pursuant to Rule 12(b)(6), Ala. R. Civ. P. Laborde and Cruz-Candelo thereafter filed two separate motions to alter, amend, or vacate the judgment dismissing their claims against the third-party purchasers and the Bank, respectively. The trial court denied both motions.

Laborde and Cruz-Candelo appealed to this Court. While the appeal was pending, they reached a pro tanto settlement with the third-party purchasers to repurchase their house for $625,000. They then jointly moved to dismiss the appeal as to those purchasers, and this Court granted that motion. Thus, only the dismissal of Laborde and Cruz-Candelo's claims against the Bank remains at issue in this appeal.

### Standard of Review

"On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review under Rule 12(b)(6)[, Ala. R. Civ. P.,] is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor,

it appears that the pleader could prove any set of circumstances that would entitle her to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether she may possibly prevail. We note that a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."

Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993) (internal citations omitted).

## Discussion

Laborde and Cruz-Candelo insist that the trial court erred in dismissing four of the five claims that they brought against the Bank.[3] With one exception, we agree.

### I. Breach of Duty of Good Faith and Fair Dealing

Laborde and Cruz-Candelo assert that the Bank breached an implied covenant of good faith and fair dealing, and they brought this claim as an independent cause of action. In their view, the Bank's conduct violated its duty not to interfere with their ability to receive the benefits

---

[3]Laborde and Cruz-Candelo do not argue that they should have their declaratory-judgment claim reinstated, so we do not consider that claim. See Ex parte Professional Bus. Owners Ass'n Workers' Comp. Fund, 867 So. 2d 1099, 1101 (Ala. 2003) ("The failure to raise an issue on appeal is the equivalent of waiving the issue.").

11

of the mortgage.

Alabama law does not recognize an independent claim for a breach of this type. Although Alabama law recognizes an "'"implied covenant of good faith and fair dealing,"'" meaning that "'"neither party shall do anything which will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract,"'" Lloyd Noland Found., Inc. v. City of Fairfield Healthcare Auth., 837 So. 2d 253, 267 (Ala. 2002) (quoting Sellers v. Head, 261 Ala. 212, 217, 73 So. 2d 747, 751 (1954)), our Court has made clear that this duty is not itself actionable. Specifically, we have explained that "a duty of good faith in connection with a contract is directive, not remedial, and that therefore an action will not lie for breach of such a duty." Tanner v. Church's Fried Chicken, Inc., 582 So. 2d 449, 452 (Ala. 1991) (citing Government St. Lumber Co. v. AmSouth Bank, 553 So. 2d 68 (Ala. 1989)).

Laborde and Cruz-Candelo effectively concede this point in their opening brief. They acknowledge that "the obligation [of good faith and fair dealing] is actionable when the breach of that duty can be tied to the performance of a specific term of the contract." Laborde and Cruz-Candelo's brief at 27. The case they cite for that proposition, Lake

12

Martin/Alabama Power Licensee Ass'n v. Alabama Power Co., 601 So. 2d 942, 945 (Ala. 1992), underscores that "[t]his Court has explicitly held that there is no good faith contractual cause of action." Accordingly, Laborde and Cruz-Candelo cannot recover for a breach of that duty standing alone. Because Alabama law forecloses such an independent cause of action, the trial court correctly dismissed this claim.

## II. Breach of Contract

Laborde and Cruz-Candelo assert, among other things, that the Bank frustrated their right to reinstate the mortgage.[4] According to them, they could have reinstated the mortgage five days before the foreclosure sale under Paragraph 18 of the mortgage contract, which they attempted to do, but the Bank deliberately kept them from paying the funds to bring the loan current.

To prevail on a breach-of-contract claim, a plaintiff must prove "'(1)

---

[4]Laborde and Cruz-Candelo also allege that the Bank ignored the incorporated federal regulations that would have allowed them to cure any time before the foreclosure sale and that the Bank failed to give proper notice of the foreclosure sale. Because we hold that the allegations that the Bank breached Paragraph 18 of the mortgage are sufficient to state the claim, we need not reach the question whether Laborde and Cruz-Candelo can sufficiently state a claim for money damages under the other theories they allege.

13

a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.'" Shaffer v. Regions Fin. Corp., 29 So. 3d 872, 880 (Ala. 2009) (quoting Reynolds Metals Co. v. Hill, 825 So. 2d 100, 105 (Ala. 2002)). For the second element, a plaintiff can show either that he "'has performed, or that he is ready, willing, and able to perform under the contract.'" Beauchamp v. Coastal Boat Storage, LLC, 4 So. 3d 443, 450 (Ala. 2008) (quoting Winkleblack v. Murphy, 811 So. 2d 521, 529 (Ala. 2001)).

Paragraph 18 of the mortgage provides for terms under which the borrower can reinstate the mortgage after acceleration. It states, in relevant part: "If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument …."

Laborde and Cruz-Candelo specifically alleged that "[m]ore than 5 days prior to the foreclosure sale," Laborde "contacted [the Bank] to reinstate by paying [the Bank] all sums due to cure the default …." Further, Laborde and Cruz-Candelo alleged that a Bank employee told Laborde how much money would be required to reinstate the mortgage

but that he was unable to perform.

But nonperformance is no defense, because they alleged that the Bank "refused to allow [Laborde] to wire the funds to [it]" and that the law firm to which he was referred "failed and refused to communicate with him at all regarding the reinstatement." In other words, Laborde was "ready, willing, and able to perform" but was prevented from doing so. Moreover, "[a] party to a contract who has caused a failure of performance by the other party cannot take advantage of that failure." Big Thicket Broad. Co. of Alabama v. Santos, 594 So. 2d 1241, 1244 (Ala. Civ. App. 1991) (citing Dixson v. C. & G. Excavating, Inc., 364 So. 2d 1160 (Ala. 1978)).

For its part, the Bank does not dispute any of Laborde and Cruz-Candelo's allegations. Indeed, its response brief on appeal ignores them altogether. Instead, the Bank doubles down on the "first breach" doctrine, arguing that, because Laborde and Cruz-Candelo failed to make their required mortgage payments, they cannot maintain a breach-of-contract action against the Bank. In the Bank's view, their prior default forecloses any possible set of facts that could support such a claim.

The Bank primarily relies on two cases. In the first case, the United

15

States District Court for the Northern District of Alabama entered a summary judgment in favor of the mortgagee when it found that the mortgagor had "failed to make payments for three years" and had "not performed under the contract." Embry v. Carrington Mortg. Servs., LLC, No. 1:22-CV-7-CLM, June 13, 2023 (N.D. Ala. 2023) (not reported in Federal Supplement), aff'd in pertinent part and vacated in part on other grounds, No. 24-13352, Nov. 6, 2025 (11th Cir. 2025) (not reported in Federal Reporter). Notwithstanding that this Court is not bound to follow the federal district court's interpretation of Alabama law, this case is not dispositive. There, Embry brought an action against Carrington for "failing to comply with … application of payment and notice requirements." Id. Carrington was not accused of breaching a cure provision like the one at issue in this case.

Next, in Tidmore v. Citizens Bank & Trust, 250 So. 3d 577, 590 (Ala. Civ. App. 2017), the Court of Civil Appeals found that "Tidmore did not perform under [the mortgage] contract [because] he tendered many late or incomplete payments, and he then defaulted on the loan outright." Again, Tidmore did not assert breach of a cure provision, but breach of notice requirements. Id. at 582. The Bank's reliance on both of these cases

16

is misplaced. They do not sweep so broadly as to prohibit <u>any</u> breach-of-contract action when a mortgagor fails to make payments on a loan and certainly not in the case where the breach claimed involves a contractually considered cure provision.

Rather, under Alabama law, when interpreting contracts, """we must examine the [text] as a whole and, if possible, give effect to each section.""" <u>Davis v. City of Montevallo</u>, 380 So. 3d 382, 389 (Ala. 2023) (quoting <u>City of Pinson v. Utilities Bd. of Oneonta</u>, 986 So. 2d 367, 371 (Ala. 2007), quoting in turn <u>Ex parte Exxon Mobil Corp.</u>, 926 So. 2d 303, 309 (Ala. 2005)); <u>see also</u> Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> § 24, at 167 (2012) ("Context is a primary determinant of meaning. A legal instrument typically contains many interrelated parts that make up the whole. The entirety of the document thus provides the context for each of its parts.").

The Bank contends that Laborde and Cruz-Candelo cannot invoke the protections of a contract they themselves first breached. But the parties plainly contemplated that very possibility -- a missed mortgage payment -- and addressed it expressly in the text of the contract in Paragraph 18. The inclusion of a cure provision was not gratuitous; it

17

was a deliberate allocation of risk, ensuring that the mortgagor retained a contractual right to remedy default before facing foreclosure.

Paragraph 18 exists to operate precisely when the mortgagor fails to make timely payments. To hold that a mortgagor forfeits the right to cure by virtue of the very default that triggers it would render the clause meaningless. The Bank's interpretation would mean that such provisions could never be enforced in the exact circumstance they were designed to govern. That outcome would discourage fair dealing in mortgage transactions altogether.

It is no consolation, as the Bank argues, that its breach can be raised as a defense in an ejectment action. Some lender obligations may be foreclosed by a borrower's default, but the cure provision is not one of them. It is an independently enforceable promise that takes effect after default, and its breach remains actionable. To hold otherwise would nullify the very protection the provision was designed to provide.

As we have stated, each provision of a contract must be given effect, if possible. A mortgagee who disregards an express right to cure breaches an independent, bargained-for obligation. The Bank's position, taken to its logical conclusion, would substantially weaken the borrower's

contractual protections and risk reducing the lender's own obligations to mere formalities.[5]

Accordingly, because Laborde and Cruz-Candelo have adequately pleaded a viable breach-of-contract claim -- and because their failure to make timely payments does not, as a matter of law, preclude them from pursuing that claim -- we hold that the trial court erred in dismissing it.

III. Wrongful Foreclosure

Laborde and Cruz-Candelo alleged in their amended pleading that "the foreclosure proceeding by the Bank was negligent, wanton or intentional" and that the "power of sale was exercised for a purpose other than to secure the debt." The Bank purportedly "relied on the assignment from MERS, as nominee for North Alabama Mortgage, Inc. to assert it was the Lender and had the right to foreclose on the mortgage." That

_____

[5]While this Court has not spoken to how the "first breach" doctrine would specifically apply in relation to a cure provision such as the one at issue here, we find the Eleventh Circuit Court of Appeals' interpretation of Georgia's "first breach" doctrine persuasive. That court has noted: "[The mortgagee] … argues that any breach of contract action … would be barred under the first breach doctrine …. [T]aken to its logical conclusion, such a rule would prohibit any mortgagor from ever enforcing any contract terms governing acceleration and foreclosure, as these terms by definition come into play following a breach." Bates v. JPMorgan Chase Bank, NA, 768 F.3d 1126, 1130 n.3 (11th Cir. 2014).

19

assignment, incorporated into the amended pleading by reference, was an assignment of the mortgage.[6]

Laborde and Cruz-Candelo maintain that they had the contractual right to cure the default before the foreclosure sale. They recount that, when Laborde called the Bank, he was told to pay more than $38,000 in fees in addition to the remaining loan balance. Although they believed the fees to be overinflated, Laborde and Cruz-Candelo asserted that they were "prepared to wire all the funds demanded directly to [the Bank]." According to their allegations, the Bank frustrated their performance by refusing to accept the tender.

A wrongful-foreclosure claim arises when "'a mortgagee uses the power of sale given under a mortgage <u>for a purpose</u> other than to secure the debt owed by the mortgagor.'" <u>Jackson v. Wells Fargo Bank, N.A.</u>, 90

---

[6]In certain circumstances, this Court is permitted to treat documents attached to the pleadings as part of the pleadings without converting a motion to dismiss into a motion for a summary judgment. <u>See</u> Rule 10(c), Ala. R. Civ. P. ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). For instance, those circumstances include when there are "'authenticated documents ... attached to the motion to dismiss'" that are "'"'"referred to in the complaint and [are] central to the plaintiff[s'] claim[s]."'"'" <u>Sumter Cnty. Bd. of Educ. v. University of W. Alabama</u>, 349 So. 3d 1264, 1266 (Ala. 2021) (quoting <u>Newson v. Protective Indus. Ins. Co. of Alabama</u>, 890 So. 2d 81, 86 (Ala. 2003)) (other citations omitted).

So. 3d 168, 171 (Ala. 2012) (quoting <u>Reeves Cedarhurst Dev. Corp. v.</u> <u>First Am. Fed. Sav. & Loan Ass'n</u>, 607 So. 2d 180, 182 (Ala. 1992)) (emphasis added). Improper purposes include using the power of sale to sell for "'"any ill motive, to effect means and purposes of his own, or to serve the purposes of other individuals,"'" <u>Paint Rock Props. v.</u> <u>Shewmake</u>, 393 So. 2d 982, 983-84 (Ala. 1981) (citations omitted). Those kinds of motivations constitute "'"fraud in the exercise of the power."'" <u>Id.</u> (citations omitted).

On appeal, Laborde and Cruz-Candelo cite <u>Harris v. Deutsche Bank</u> <u>National Trust Co.</u>, 141 So. 3d 482, 491 (Ala. 2013), in which this Court reinforced that a trustee must have "received an assignment of the note" for it to "execute the power of sale in its own name." <u>See also</u> <u>Coleman v.</u> <u>BAC Servicing</u>, 104 So. 3d 195, 205 (Ala. Civ. App. 2012) ("'"The note is the cow and the mortgage the tail. The cow can survive without a tail, but the tail cannot survive without the cow."'") (quoting <u>Restatement</u> <u>(Third) of Property: Mortgages</u> § 5.4, Reporter's Note -- Introduction, cmt. a at 386 (Am. L. Inst. 1997)). The Court found "that on the state of the current record there is a genuine issue of material fact as to whether the trustee received [that] assignment." <u>Harris</u>, 141 So. 3d at 491.

However, as the Bank points out, under those facts, the Harris Court affirmed a summary judgment for the mortgagee on the mortgagor's wrongful-foreclosure claim. Id. The Court reiterated that a wrongful-foreclosure action lies only when the mortgagee exercises the power of sale for a purpose other than collecting the debt and recognized that the Harrises did not "allege that the power of sale was exercised for any purpose 'other than to secure the debt owed by them.'" Id.

But Harris was decided at the summary-judgment stage, where the mortgagor must produce evidence of such an improper purpose. At the pleading stage, the bar is lower: allegations that the mortgagee lacked authority to foreclose, coupled with general assertions that the sale was conducted for an improper purpose, are sufficient to state a claim. Although Harris indicates that an improper "purpose" (that is, a state of mind) is a requirement for a wrongful-foreclosure claim, the motion-to-dismiss stage is different from the summary-judgment stage. Under Rule 9(b), Ala. R. Civ. P., a "condition of [the] mind" such as purpose "may be averred generally" at the pleading stage.

Thus, while Harris supports the entry of a summary judgment for a mortgagee when the record contains no evidence of improper purpose

22

and the mortgagor did not allege an improper purpose, it does not preclude a mortgagor from proceeding past the pleading stage when they specifically allege, as Laborde and Cruz-Candelo did, that the "power of sale was exercised for a purpose other than to secure the debt." The trial court was incorrect to dismiss this claim.

### IV. Unjust Enrichment

Laborde and Cruz-Candelo's final claim of unjust enrichment, in addition to incorporating the rest of the statements in their amended pleading, stated that "Defendant has been unjustly enriched as a result of its actions." They alleged that the property sold for $480,000 -- more than their original purchase price of $416,150.

Alabama law recognizes unjust enrichment as "'an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another.'" Avis Rent A Car Sys., Inc. v. Heilman, 876 So. 2d 1111, 1123 (Ala. 2003) (citation and emphasis omitted). "'To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation.'" Matador Holdings, Inc. v.

23

HoPo Realty Invs., L.L.C., 77 So. 3d 139, 145 (Ala. 2011) (plurality opinion) (quoting Portofino Seaport Vill., LLC v. Welch, 4 So. 3d 1095, 1098 (Ala. 2008)).

Taken together, Laborde and Cruz-Candelo's allegations permit a reasonable inference that the Bank may have received and retained more than it was entitled to under the mortgage. At this stage, however, the Court's task is not to weigh evidence but to assess the sufficiency of the pleadings. Under Alabama's liberal notice-pleading standard, dismissal is proper only when there exists no set of facts under which the plaintiff could prevail. Nance, 622 So. 2d at 299.[7] Accepting Laborde and Cruz-Candelo's allegations as true and drawing all reasonable inferences in their favor, the Court cannot conclude as a matter of law that recovery

_____

[7]The Bank argues that Laborde and Cruz-Candelo cannot bring an unjust-enrichment claim because parties cannot bring such a quasi-contract claim when there is an express contract between the parties. The Bank correctly states the law. See Kennedy v. Polar-BEK & Baker Wildwood P'ship, 682 So. 2d 443, 447 (Ala. 1996) ("[U]nder Alabama law, claims of both an express and an implied contract on the same subject matter are generally incompatible."). Laborde and Cruz-Candelo respond by explaining that they have pleaded in the alternative and have also alleged that the Bank does not own the note (that is, that there is no contract between these parties). Because, in this case, "the existence of an express contract … [is] disputed," they can pursue, at the pleading stage, both claims for a surplus. Id.

24

for unjust enrichment is foreclosed. Thus, the trial court erred in dismissing this claim.

## Conclusion

The trial court correctly dismissed Laborde and Cruz-Candelo's claim of breach of the duty of good faith and fair dealing. However, because they sufficiently alleged facts supporting their other three claims, the trial court erred in dismissing those claims. We therefore affirm the dismissal of the first claim, reverse the dismissal of the other three claims, and remand the case for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.

Stewart, C.J., and Shaw, McCool, and Parker, JJ., concur.

Bryan, J., concurs in the result.

Wise, J., concurs in part and dissents in part, with opinion, which Sellers and Mendheim, JJ., join.

WISE, Justice (concurring in part and dissenting in part).

I concur to affirm the trial court's dismissal of Miguel A. Laborde and Himelda Johanna Cruz-Candelo's claim of breach of the duty of good faith and fair dealing. However, I dissent as to the majority's decision to reverse the trial court's dismissal of Laborde and Cruz-Candelo's claims of breach of contract, wrongful foreclosure, and unjust enrichment.

Sellers and Mendheim, JJ., concur.